S. ANDRAL KILMER, Respondent, *v.* DR. KILMER & CO., Appellant.

Third Department, December 28, 1916.

Injunction — sale of patent medicine business — plaintiff's mail inadvertently opened by defendant — when injunction should not issue — inadvertent misbranding of medical article.

Where a contract by which the plaintiff sold to the defendant all his interest in a patent medicine business, together with the good will thereof, and which empowered the defendant to continue the use of the trade name which embodied the surname of the plaintiff, also specifically regulated with great definiteness the plaintiff's right to receive mail intended for him personally and required the defendant to redeliver to the plaintiff any individual mail which the defendant might receive from the post office authorities, an injunction should not issue restraining the defendant from opening letters intended for the plaintiff, when as a matter of fact in the course of over seven years during which the defendant has received between 2,000,000 and 3,000,000 pieces of mail it has erroneously opened only 129 letters intended for the plaintiff, those being delivered by the postal authorities, and especially so where there is no evidence whatever of any bad faith on the part of the defendant, but, on the contrary, it has endeavored at all times to live up to its agreement.

*Held further*, that the defendant, which was entitled to manufacture and vend a certain medical appliance invented by the plaintiff, had not violated any of the plaintiff's rights so as to call for an injunction merely because through inadvertence it had in some cases when advertising the article omitted the words " and Company " after the plaintiff's surname, which it was authorized to use, if in the majority of instances the article was properly labeled.

Under the circumstances no intentional wrongdoing or intent to violate the plaintiff's rights being shown, an injunction would only be mischievous and serve no proper purpose.

APPEAL by the defendant, Dr. Kilmer & Co., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 21st day of September, 1915, upon the decision of the court after a trial at the Broome Special Term.

*Theodore R. Tuthill* [*William Nottingham* of counsel], for the appellant.

*Rollin W. Meeker,* for the respondent.

KELLOGG, P. J.:

By the judgment under review the defendant is restrained from opening certain mail intended for the plaintiff, and from using the name of the plaintiff in certain ways in its business. Prior to March 14, 1892, the plaintiff and his brother Jonas were partners in manufacturing, advertising and putting upon the market certain patent or proprietary medicines under the name of Dr. Kilmer & Co., the plaintiff being the doctor in the firm. On that day he sold to his brother his interest in the firm business and property, and the defendant has succeeded to the rights of the brother therein. The contract of sale, in describing the property sold, provides that it shall include "all the trade-marks and copyrights, labels and wrappers, circulars and pamphlets of the now firm of 'Dr. Kilmer & Co.;' also the firm name 'Dr. Kilmer & Co.,' and the good will of said firm." The contract, however, provided that the plaintiff as an individual is the owner of "'Dr. Kilmer's Medicated Inhalation Compound,' which consists of one bottle A. B., one bottle B. B., one package D. H. M., one Inhaler;" also of "'Infallible Treatment,' which consists of white positive drops, yellow negative drops, dry herbal compound, generative application." Also "Cancer & Tumor Syrup, Cancer & Tumor Dissolvent, Cancer & Tumor Injection;" also "what is called Female Swelled Neck Cure," all of which were advertised in the Invalid's Guide to Health published by the firm and were to be published by its successor, who should continue

to prepare, advertise and put upon the market said articles, paying to the plaintiff twenty-five per cent of the amount received therefor. The plaintiff agreed not to engage in the sale or manufacture of any patent or proprietary medicine and not to permit the use of his name therein. It was also agreed, in the 8th subdivision, that the Invalid's Guide to Health should be continued by Dr. Kilmer & Co., and was to contain a portrait of the plaintiff not smaller than the one then used, with the same printing matter under it, except it might be in larger type, and a cut of the plaintiff making an examination of the throat with the laryngoscope, together with the printed matter below the same in substantially the same manner as theretofore, and the paragraph then continued: "The balance of the matter that may be contained in the said future Guides, except as to the four classes of Private and Special Remedies of Dr. S. Andral Kilmer as aforesaid to be entirely at the discretion of Jonas M. Kilmer or his successors or rather Dr. Kilmer & Co., but not to contain the name of Dr. S. Andral Kilmer in any place therein where it does not now appear without the written consent of S. Andral Kilmer and to contain nothing injurious to any Sanitarium or Mineral Water in which the said S. Andral Kilmer may be interested. The said 'Invalid's Guide to Health' shall hereafter be sent out with said medicines by said J. M. Kilmer or 'Dr. Kilmer & Co.' substantially as it has heretofore been done by said firm."

The plaintiff, as the contract shows, proposed to continue his private practice and to carry on one or more sanitariums and to sell mineral water. The contract also provided as to the distribution of the mail, but the parties had in mind that some confusion, on account of similarity of name, might arise in the future, and fixed with great definiteness the rights of the parties to mail thereafter received, and provided that in case the defendant received mail which was directed to or belonged to the plaintiff, it should deliver or mail it to him within twenty-four hours if the mail is important as to time and in thirty-six hours if not important as to time. Particular notice was given to the postmaster as to the manner in which mail should be delivered.

March 18, 1901, the parties made a supplemental agreement

modifying the former agreement between them.  By it the plaintiff sold to the defendant the proprietary remedies which had been reserved to him by the former contract, and the agreement continues: "(2) Said S. Andral Kilmer hereby absolves and releases said Jonas M. Kilmer from all future obligation and liability or duty imposed upon or undertaken by said Jonas M. Kilmer under and pursuant to the provisions of the Eighth paragraph of said contract of March 14th, 1892, except that no advertisement or publication printed or circulated by said Jonas M. Kilmer or said Dr. Kilmer & Co. shall contain anything injurious to any sanitarium or mineral water in which S. Andral Kilmer may be interested."

The plaintiff, in carrying on the several sanitariums and mineral water business and his private practice, was receiving such mail at the Binghamton office, and for the last seven and one-half years the defendant has received, assorted, answered or attended to on an average about 1,000 separate pieces of mail each day.  Defendant's mail is delivered to it by the post office authorities, and in the mail so delivered 165 letters have been received and opened by it, which it promptly turned over to the plaintiff pursuant to the contract, of which 36 were in fact addressed to the defendant.  So that in seven and one-half years, while opening between two and three million pieces of mail delivered to it by the post office authorities, the defendant has erroneously opened 129 letters.  There is an entire absence of any suggestion in the evidence that these letters were opened in bad faith or for any ulterior purpose, or that the defendant in handling or assorting the mail delivered to it has not exercised reasonable care to prevent mistakes.  The evidence establishes the entire good faith of the defendant and that it has at all times been solicitous to live up to the agreement with reference to the mail and that any errors were unintentional mistakes and apparently were unavoidable in handling by various employees the great mass of mail the defendant receives.  The mistakes as to this mail first occurred at the post office, and the error there, made the mistakes by the defendant possible if not probable.  As we have stated, the contract definitely fixes the rights of the parties to all mail received, and the lists furnished the postmaster

make his duty plain. There never has been between the parties any dispute as to the right to any particular parcel of mail and none exists. The plaintiff cannot engage in the patent medicine business and his name cannot be employed in that business. The defendant is not in the sanitarium business, or in the mineral water business, and there is no reason why the defendant should seek to read the plaintiff's mail. If an injunction had fixed the rights of the parties it could not make the plaintiff's right to his mail more secure, and if some of his mail which the postmaster erroneously delivered to the defendant had been by innocent mistake opened by some of its employees, contrary to its direction and intentions, no punishment could follow for such a technical violation. So that an injunction can do no possible good and adds nothing to the sanctity of the contract existing between the parties. It does, however, change and interferes with the contract existing between the parties, and is mischievous and of no practical value. It was, therefore, erroneously granted. It seems that the action, so far as it relates to the mail matter, was not brought to redress a wrong or to prevent a threatened wrong, but was evidently intended for some ulterior purpose. The same seems equally true as to the other matters complained of. One of the injunctive provisions of the judgment prohibits the defendant from using the name of the plaintiff " in any of its advertisements, pamphlets, circulars, labels or other advertising matter in any place wherein the same was not actually used on March 14th, 1892, as provided in the contract of that date." That provision evidently was inserted to cover the agreement in subdivision 8 of the contract by which it is provided that the Guide to Health shall contain the plaintiff's name and portrait, but shall not contain his name " in any place therein where it does not now appear " without his consent. This restriction was intended to give the remedies in which the plaintiff was interested an advantage over the other remedies, as it relates to the Guide to Health, which advertised all the remedies, and not to other advertisements. The judgment overlooks the fact that the supplemental agreement did away with that provision and substituted in lieu thereof that no advertisement or publication printed or circulated by Dr. Kilmer & Co. "shall contain any-

thing injurious to any sanitarium or mineral water in which S. Andral Kilmer may be interested." One provision in the judgment enjoins the use of the plaintiff's name without regard to prefix or suffix in connection with its business, in such a way or manner as is calculated to lead the public to believe that S. Andral Kilmer is the physician connected with or in charge of the medical department of the defendant. The agreement between the parties contemplates that the plaintiff's name may be used in some instances in connection with the business, and there is no substantial evidence of any wrongful use of the plaintiff's name or of any violation of the spirit of the agreement in that respect.

We are now to speak of what is apparently the most serious matter in this litigation, if the word "serious" can be used in connection with it. When the plaintiff was in the firm it manufactured, advertised and sold a pile remedy, and the Guide to Health and other literature issued by it advocated that the cure be applied by a pile pipe, and gave directions for preparing one. After the plaintiff left the firm, Dr. Kilmer & Co. put upon the market a pile pipe upon which were the words "Dr. Kilmer & Co.'s Pile Pipe." But in the Invalid's Guide to Health, and perhaps in another circular giving a price list of the various articles sold by the defendant, after mentioning some remedies as Dr. Kilmer's, as might properly be done, we find the words "Dr. Kilmer's Pile Pipe, 25 cents," and in another place where the price of Dr. Kilmer's Pile Remedy is given as 25 cents, we find the words "Pile Pipe 25 cents." The pile pipe is only sold and known as Dr. Kilmer & Co.'s Pile Pipe. There was no intention to deceive the public or to injure the plaintiff by these circulars, and no possible harm could come to the plaintiff. These circulars containing a picture of the pile pipe, with the name "Dr. Kilmer & Co.'s Pile Pipe" upon it, are not suggestions that the pile pipe is made or sold by the plaintiff. The omission of the words "and Company" after the words "Pile Pipe" in the price lists was clearly an inadvertence, and unimportant. To many physicians the suggestion that their names were being used with reference to a pile pipe in a public print would not be agreeable; they might think it reflected upon them as indicating that they were engaged in

such a traffic. But the fact that plaintiff invented and put the pile remedy upon the market, and advised its application by a pile pipe, and his present sanitarium enterprises, lead to the fair inference that he is not prejudiced by the matter complained of.

The record is large, the exhibits very numerous, and we cannot, in the limits of this opinion, in detail exhaust the subjects of mail and pile pipe advertisements fully; neither can we take up each matter referred to in the argument or in the evidence. The whole record has been carefully considered and there does not appear to have been any violation of the plaintiff's rights which calls for injunctive relief. We conclude that the judgment is not supported by the evidence and that under all the circumstances injunctive relief is not required or proper; it can only be mischievous and can have no proper purpose.

From the opinion we infer that the court was influenced, perhaps controlled, by *Dr. David Kennedy Corporation* v. *Kennedy* (165 N. Y. 353) where there was an actual dispute as to who was entitled to receive the mail coming to the post office. The Post Office Department at Washington, at the instigation of the parties, interfered, and gave directions about the delivery of the mail, and the dispute was such, and of such importance, that it was necessary for the court to settle the rights of the parties to the mail which came to the post office. Here there is no dispute about the mail or its ownership. There are few isolated mistakes which were promptly corrected in the manner the contract provided that such mistakes should be corrected.

There has been no intentional violation of the plaintiff's rights. The mistakes shown were unintentional and were of no possible injury to the plaintiff, and are too trivial to require injunctive relief. The judgment should, therefore, be reversed upon the law and the facts and the complaint dismissed, with costs.

All concurred.

Judgment reversed, with costs, upon the law and facts and the complaint dismissed, with costs. The court disapproves of the findings of fact numbered eleven, fourteen, sixteen and seventeen.